# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**FRANKLIN D. ANDERSON,**

    **Plaintiff,**

v.                                                               Civil Action No. 2:09cv131
                                                                          (Judge Maxwell)

**WARDEN JOEL ZIEGLER,**
**RICHARD E. WILLIAMS AND**
**CHAPLAIN BRIAN PRICE,**

    **Defendants.**

## OPINION/REPORT AND RECOMMENDATION

### I. Procedural History

The *pro se* plaintiff initiated this civil rights action on November 10, 2009. After the plaintiff was granted permission to proceed as a pauper, and he paid the assessed initial partial filing fee, the undersigned conducted a preliminary review of the complaint and determined that summary dismissal was not warranted. Accordingly, the Clerk was directed to issue summonses for the defendants and to forward the appropriate paperwork to the United States Marshal Service for service of process.

After service of process was executed, the defendants sought permission to file a consolidated response and an extension of time to do so. Permission was granted on February 17, 2010, and the defendants filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment on March 15, 2010.

Because the plaintiff is proceeding without counsel in this case, the Court issued a Roseboro

Notice on March 17, 2010. Despite such notice, the plaintiff has not filed a response to the defendants' motion. Accordingly, this case is before the undersigned for a Report and Recommendation pursuant to LR PL P 72.01.

## II. Contentions of the Parties

### A. The Complaint

In the complaint, the plaintiff asserts that, in May of 2009, he was an inmate at FCI-Morgantown. During his incarceration, the plaintiff participated in the Bureau of Prisons ("BOP") intensive drug program ("RDAP") and worked in the institution's chapel. On May 14, 2009, the plaintiff was advised by defendant Richard E. Williams ("Williams"), that he was in violation of the program rules of the RDAP because he had over reported the number of hours he had worked for Chaplaincy Services. Williams informed the plaintiff that he had personally and fully investigated the claims and that the plaintiff's sanctions for the violation would be that he is recycled back into the RDAP program.

The plaintiff asserts that the allegations of wrongful conduct were inaccurate. In support of this contention, the plaintiff asserts that he completed his time card with the exact number of hours and in the exact manner in which Chaplain Price had directed the inmate workers to complete their time sheets. The plaintiff asserts that all inmates in Chaplaincy Services completed their time cards in a like manner, but that he was the only one who was sanctioned. During the investigation of the charges, Chaplain Price stated that he had never told the plaintiff or any other inmate to complete his time card in the manner which resulted in sanctions for the plaintiff. However, after the investigation, the plaintiff asserts that Chaplain Price "called everyone together and told them he was changing the policy." Complaint at 7B. Moreover, the plaintiff asserts that he can produce

2

numerous witnesses to affirm that many of the various departments at FCI-Morgantown improperly administer the inmate pay process.

Next, the plaintiff asserts that he tried to discuss the situation with Williams, but that Williams stated he had already thoroughly investigated the situation and found the plaintiff to be dishonest in his claims. Nonetheless, the plaintiff asserts that none of his fellow inmates was ever questioned and a simple review of the pay sheets would have confirmed his claims. Thus, the plaintiff asserts that Williams' investigation amounted to no investigation at all.

The plaintiff proceeded to challenge the charges through the BOP's administrative remedy process. At each level his claims were denied.

On May 15, 2009, the plaintiff withdrew from the RDAP because he felt he had been treated unfairly. He further felt that the program was not being administered properly and that he was being denied his court ordered treatment. The plaintiff asserts that this was not the first time he had been wrongfully recycled through the program.

As a result of the defendants' actions, the plaintiff contends that he was denied graduation with his class on June 2, 2009, and his release at that time to a halfway house for treatment and transitional services. Therefore, he contends that he was denied access to the addiction therapies that he required and that were ordered by the sentencing court. Furthermore, the plaintiff asserts that because he was not allowed to graduate from the program, he was unable to obtain adequate medical care for his various health problems which caused great physical pain and discomfort. In support of this claim, the plaintiff asserts that he was advised on October 21st that his medical problems would not be treated because he was within two months of his release. The plaintiff also asserts that because he did not graduate with his class, he is unable to obtain the six months of drug therapy after

care that his placement in a halfway house would have provided.

The plaintiff contends that because of the institution's improper administration of the RDAP, and the hostile medical environment, he was wrongfully denied treatment and wrongfully sanctioned. In addition, he asserts that he was sanctioned for the same behavior as all other inmates in the same situation and that because he was the only one sanctioned, that he suffered discrimination and equal protection of the laws. As relief, the plaintiff seeks his immediate release and provisions for the medical care he should have received for his physical maladies as well as a treatment program for his various addictions. The plaintiff further seeks compensation in the amount of two million dollars ($2,000,000) for the physical pain and mental stress that he suffered.

**B. The Defendants' Motion**

In their motion, the defendants assert that the plaintiff was designated to FCI-Morgantown on October 15, 2007. He entered the RDAP on June 2, 2008. On May 7, 2009, the Chapel Assistant reported to the drug treatment staff that the plaintiff had been over reporting the number of hours he had worked. It was alleged that the plaintiff was claiming 3.5 hours of work on his pay sheet when he had only worked 1.5-2 hours a shift. The plaintiff was confronted with these allegations and stated that he was only doing what the Chaplain had told him to do. He also alleged that all of the other inmates working in Chaplaincy Services completed their time cards in a like manner.

When questioned, the Chaplain reported that he "would never have told an inmate to put down 3.5 hours when he only worked 1 or 2." Defs. Ex. 1. In addition, Williams, the RDAP Coordinator, audited the other inmate pay sheets and compared the number of hours worked with the posted Chapel work schedule. Williams found that all other inmates claimed only the number of hours they were scheduled to work.

4

Consequently, on May 14, 2009, the plaintiff was given a written warning for his behavior. He was also advised that his behavior showed that he was not ready to leave the RDAP and that he would be moved to another group to allow him additional time in treatment. The plaintiff was given the choice to remain in treatment and go to the other group, or leave the program. The plaintiff chose to withdraw from the program.

The plaintiff was designated to a halfway house on December 18, 2009, and placed on home confinement on February 12, 2010.[1] The plaintiff's current projected release date is May 18, 2010.

Based on these uncontested facts, the defendants seek the dismissal of the complaint, or judgment in their favor, for the following reasons:

(1) defendant Ziegler is not an appropriate defendant in this case because he lacked personal involvement;

(2) the plaintiff failed to exhaust his medical claims;

(3) the plaintiff cannot obtain injunctive or declaratory relief against the defendants in their individual capacities;[2]

(4) the plaintiff failed to state a cognizable claim under <u>Bivens</u>;[3]

(5) the plaintiff's due process claim fails because there is no protected liberty interest in discretionary early release under 18 U.S.C. § 3621(e); and

---

[1]Thus, he request for immediate release is moot.

[2]As will be noted later in this Order, the Court does not find that the plaintiff has requested injunctive or declaratory relief and, for that reason, will not address this issue in further detail herein.

[3]<u>Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971) (authorizing suits against federal employees for violations of statutory or constitutional rights).

(6) the defendants are entitled to qualified immunity.[4]

### III. Standards of Review

**A. Motion to Dismiss**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but "must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the

---

[4] Because the undersigned finds that no violation of the plaintiff's constitutional rights occurred, the defendants claim of qualified immunity will not be addressed herein.

speculative level," *id*. (citations omitted), to one that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E. I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir.2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, adopted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. *Id*.

**B. Motion for Summary Judgment**

Under the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The Court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine

issues of fact. Celotex at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. *Id.* This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson at 256. The "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment. *Id.* at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita, at 587 (citation omitted).

### IV. Analysis

**A. Defendant Ziegler**

Liability in a Bivens case is "personal, based upon each defendant's own constitutional violations." Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir.2001)(internal citation omitted). Therefore, in order to establish liability in a Bivens case, the plaintiff must specify the acts taken by each defendant which violate his constitutional rights. See Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994); Colburn v. Upper Darby Township, 838 F.2d 663, 666 (3rd Cir. 1988). Some sort of personal involvement on the part of the defendant and a causal connection to the harm alleged must be shown. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986). *Respondeat superior* cannot form the basis of a claim for a violation of a constitutional right in a Bivens case. Rizzo v. Good, 423 U.S. 362 (1976).

Nonetheless, in Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir. 1990), the Fourth Circuit

8

recognized that supervisory defendants may be liable in a Bivens action if the plaintiff shows that: "(1) the supervisory defendants failed to provide an inmate with needed medical care; (2) that the supervisory defendants deliberately interfered with the prison doctors' performance; or (3) that the supervisory defendants tacitly authorized or were indifferent to the prison physicians' constitutional violations." In so finding, the Court recognized that "[s]upervisory liability based upon constitutional violations inflicted by subordinates is based, not upon notions of *respondeat superior*, but upon a recognition that supervisory indifference or tacit authorization of subordinate misconduct may be a direct cause of constitutional injury." *Id.* However, a plaintiff cannot establish supervisory liability merely by showing that a subordinate was deliberately indifferent to his needs. *Id.* Rather, he must show that a supervisor's corrective inaction amounts to deliberate indifference or tacit authorization of the offensive practice. *Id.* In reviewing claims of medical care, supervisors are entitled to rely on the judgment of the medical staff as to the course of treatment prescribed. *Id.*

In this case, the plaintiff does not allege any personal involvement on the part of defendant Ziegler. Instead, it appears he has named defendant Ziegler merely in his official capacity as the Warden of FCI-Morgantown. However, a suit against government agents acting in their official capacities is considered a suit against the United States itself. See Kentucky v. Graham, 473 U.S. 159, 165 (1985) ("Official-capacity suits . . . 'generally present only another way of pleading an action against an entity of which an officer is an agent.'"). Remedy under Bivens is against federal officials in their individual capacities and not the federal government. Thus, the plaintiff cannot maintain his claim against Warden Ziegler.

Additionally, the plaintiff has failed to show that defendant Ziegler tacitly authorized or was indifferent to the alleged violations of his constitutional rights. Consequently, he has failed to make

9

the appropriate showing of supervisory liability. Accordingly, Warden Ziegler should be dismissed with prejudice as a defendant in this action.[5]

**B.  Defendants Williams and Price**

The plaintiff's complaint is not a model of clarity. He does not state with much specificity the bases for his claims. However, the Court believes the plaintiff has alleged three claims in his complaint. First, the plaintiff appears to assert that his due process rights were violated when he was recycled back into the RDAP as a sanction for falsifying his pay sheets. Second, the plaintiff asserts an equal protection claim with regard to him being the only Chaplaincy Services worker sanctioned for the manner in which he completed his time sheets. Third, the plaintiff appears to assert that the defendants were deliberately indifferent to his serious medical needs by refusing to offer him treatment for his physical illnesses merely because he was only two months from his release date.

1. Due Process Claim

The Due Process Clauses of the Fifth and Fourteenth Amendments provide that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. V and XIV, §1. Before it can be determined that the due process clause was violated, it must be determined that a liberty interest was at stake. Sandin v. Connor, 515 U.S. 472 (1995). It is well-established that a prisoner has no constitutional right in being released before the completion of a valid sentence. Id. at 484; see also Greenholtz v. Inmates of Neb. Penal & Corr. Complex, 442 U.S. 1 (1979).

In this case, the plaintiff asserts that his due process rights were violated when he was

---

[5]To the extent the plaintiff asserts that defendant Zielger violated his constitutional rights by denying the plaintiff's institutional grievances, that is not the type of personal involvement required to state a Bivens claim. See Paige v. Kupec, 2003 WL 23274357 *1 (D.Md. March 31, 2003).

10

recycled back into the RDAP, thereby preventing him from obtaining the benefits of early release under the program. Nonetheless, on many occasions, this Court has specifically found that there is no protected liberty interest in discretionary early release under 18 U.S.C. § 3621(e) for completion of the RDAP. See *e.g.*, Herron v. McCall, 2007 WL 1991051 *6 (N.D.W.Va.); see also Fonner v. Thompson, 955 F.Supp. 638, 642 (N.D.W.Va. 1997). Accordingly, the plaintiff's due process claim fails and should be dismissed with prejudice.[6]

2. Equal Protection Claim

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall … deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, §1. To be successful on an equal protection claim, the plaintiff must demonstrate "that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Morrison v. Garraghty, 239 F. 3d 648, 654 (4th Cir. 2001). If the plaintiff makes such showing, "the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." *Id.*

Here, the plaintiff has failed to show that he was treated differently from others with whom he was similarly situated or that his treatment was a result of intentional or purposeful

---

[6]To the extent that the plaintiff argues his due process rights were violated because the BOP did not conduct a proper investigation, that claim is without merit. The discrepancy in the plaintiff's time sheets was reported to RDAP staff by the Chapel Assistant. When questioned by the RDAP staff, the plaintiff asserted that the Chaplain told the Chaplaincy Services workers to complete their time cards in that manner, and that all of the inmates completed their pay sheets that way. In light of the plaintiff's statements, the Chaplain was questioned. He told the investigator that he would never have told the inmates to falsify their pay sheets. In addition, the investigator audited the time sheets of the other worker inmates in that department and did not find the same discrepancies as in the plaintiff's time sheets. Therefore, the investigator found the plaintiff's claims not credible and recommended sanctions. Thus, staff conducted an appropriate investigation and the plaintiff received all the process he was due in that regard.

discrimination. As previously noted, the discrepancy in the plaintiff's pay sheets was brought to the attention of the RDAP Coordinator after it was discovered by Chaplaincy Services. Moreover, the pay sheets of the other inmates in Chaplaincy Services were audited after the plaintiff claimed that everyone was completing their pay sheets in a like manner. However, no discrepancies were found in the pay sheets of the other inmates. In addition, the plaintiff has failed to show that he is a member of suspect class. Thus, the plaintiff fails to state an equal protection claim and that claim must be dismissed with prejudice.

    3.   Deliberate Indifference Claim

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies. 42 U.S.C. § 1997(e)(a). Exhaustion as provided in § 1997(e)(a) is mandatory. Booth v. Churner, 532 U.S. 731, 741 (2001). A Bivens action, like an action under 42 U.S.C. § 1983, is subject to the exhaust of administrative remedies. Porter v. Nussle, 534 U.S. 516, 524 (2002). The exhaustion of administrative remedies "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes"[7] and is required even when the relief sought is not available. Booth at 741. Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted *prior to* filing a complaint in federal court. See Porter at 524 (citing Booth at 741) (emphasis added). In addition, the Supreme Court has stated that "we will not read futility or other exceptions into statutory exhaustion requirements . . ." Booth at 741 n. 6.

The BOP makes available to its inmates a three level administrative remedy process if

---

[7]Porter at 524.

informal resolution procedures fail to achieve sufficient results. See 28 C.F.R. § 542.10, et seq. This process is begun by filing a Request for Administrative Remedy at the institution where the inmate is incarcerated. If the inmate's complaint is denied at the institutional level, he may appeal that decision to the Regional Office for the geographic region in which the inmate's institution of confinement is located. (For inmates confined in West Virginia, those appeals are sent to the Mid-Atlantic Regional Director in Annapolis Junction, Maryland.) If the Regional Office denies relief, the inmate can appeal to the Office of General Counsel via a Central Office Administrative Remedy Appeal. An inmate must fully complete each level of the process in order to properly exhaust his administrative remedies. See Woodford v. Ngo, 548 U.S. 81, 93-94 (2006) (the PLRA requires *full* and *proper* exhaustion).

In this instance, it is undisputed that the plaintiff has never filed any administrative remedy with regard to his claim that he was refused needed medical treatment because he was within two months of his release date. Defs. Ex. 6 at Att. A. Accordingly, this claim is not exhausted. Moreover, because more than twenty (20) days have passed since the alleged violation of his rights, 28 C.F.R. § 542.14(a), the plaintiff cannot now exhaust that claim and it is procedurally defaulted. See Woodford v. Ngo, *supra*. Thus, it must be dismissed with prejudice.

## V. Recommendation

For the reasons stated, the undersigned recommends that the Defendants' Motion to Dismiss, or in the alternative, Motion for Summary Judgment (dckt. 29) be **GRANTED**, and the plaintiff's complaint (dckt. 1) be **DENIED** and **DISMISSED with prejudice**.

Within **fourteen (14) days** after being served with a copy of this Opinion/Report and Recommendation, any party may file with the Clerk of Court written objections identifying those

portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections should also be submitted to the Honorable Robert E. Maxwell, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to mail a copy of this Opinion/Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as shown on the docket, and to counsel of record via electronic means.

DATED: April 23, 2010.

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE